Good morning, Your Honors. Ben Souter on behalf of Helen Stone & Youngberg. I've been arbitrating cases at Penrowe, its predecessor, for 30 years, and I recognize that bringing a motion to vacate an arbitration award is unusual and they're rarely granted, so I understand the law. Our firm has arbitrated over 700 cases to conclusion in this forum,  and I mentioned that at the outset because we don't take it lightly to come and take the district court's time and your time with this sort of motion, but I think this is a very unique set of facts here and a situation that merits, under the existing law, vacation of the underlying arbitration award. In every case, one should look at both the facts and the law, of course, and in this case we have an unusual situation with the facts. The facts have been, in large part, agreed to. Mr. Lapidus, in his opening statement, stated to the panel, this is a case where most of the facts are not in dispute. It is a case that will call upon you to apply the Penrowe rules and regulations and the case decisions by Penrowe and the SEC and the courts to the conduct that is at issue. That's at Excerpt of Record 613. And significantly, this is in our reply brief, the last ten or so pages, rather than make argument, we wanted to give you folks the benefit of the judicially admitted facts that are apparent from the district court record where the complaint was responded to paragraph by paragraph and there are unequivocal admissions. I think that that's significant as the court determines whether or not the law that we contend was manifestly disregarded was, in fact, manifestly disregarded. How do we draw a line between just an erroneous ruling and manifest disregard of the law? That is the key issue, I think, and it's a spectrum, and I think it depends on what the facts were, what the evidence was, and what has been judicially admitted and what one can infer from the facts and the law that exists. We know that Bernard Madoff perpetrated an unprecedented fraud. We know that there are federal cases out there that attribute the cause of the losses of investors to Mr. Madoff's fraud. So that's a starting point, and we know in this case, Your Honor, that claimant's own expert admitted that Madoff caused the losses. Well, just because one bad actor is responsible doesn't mean that others are or are not. I mean, there are several things that have to be demonstrated besides that Mr. Madoff was a problem, and I guess my question in this case has to do with California state law, with which I am not terribly familiar, but it appears to me that one could make the connection that California law does not contain the same causation requirements as the cases that were presented to the arbitrators. And so tell me why, under California state law principles, there were negligence and contract claims here, why there was manifest disregard of California law. That's an excellent question, Judge Graber. The fact of the matter is, and this is in our briefs, that every cause of action that was asserted requires proximate causation. Now, in California, a substantial factor is a standard, and that was presented to the arbitrators, whether it was a substantial factor that Stoney Youngberg, a year and six or three or four months, three months to five months, a year and a total of 15 to 17 months before the Madoff fraud was discovered, whether anything that happened when Stoney Youngberg referred the investor to this third-party hedge fund fund manager, whether anything that happened could logically or conceivably be related to what happened later. This is a case where it's stipulated through the judicial admissions that Mr. Green, the broker, was honest, that Stoney Youngberg did not participate in any fraud, that it didn't do those sorts of things that should or could give rise to liability in this context. Plus, you have the passage of time. You have an investor who's happy at the month 15, and then two months, three months later, a fraud is revealed that we had nothing to do with, that the SEC didn't stop, that the SEC didn't suspect Madoff of all these things. And all of a sudden, we have a group of three arbitrators dispensing their own industrial brand of rough justice there. The Supreme Court in Stolt-Nielsen said they're not allowed to do that. Did they say anything like, we don't like your stinky laws or tear it out of the book or anything like that? Not explicitly, but they did make some affirmative statements. One, when we objected to this, and this is in the record, to some aspect of what Mr. Lapidus was presenting, the panel said, we will look at the cases that you've submitted. We brought a motion for non-suit. This is reflected in the record. And we said there's no causation here under the law. It doesn't work. These are the 10b-5 cases you cited? Pardon me? These are the 10b-5 cases you cited? These were not just 10b-5. No, we started with the Supreme Court case Holmes v. Sipic, and that's the one that's in the negligence report. Let me cut to the chase. They say they win because they succeeded on a California tort theory. Okay. So I'm asking, do these cases go to the California tort theory, or are these the cases that under federal securities laws apply? They succeeded in confusing what the law is. And let me tell you what the California law is. This is Jeff Graber's initial question here. Every cause of action, every claim that was asserted required proximate cause. Mr. Lapidus and his opposition said there's no requirement under breach of contract. We demonstrate in our reply brief that that's not correct. Mr. Lapidus says, well, this novel civil code section 3543 is kind of a no-fault. Whoever's innocent but started the process, they ultimately get stuck with the fraud that was perpetrated by somebody else a year and a half later. Well, that's not the standard, because under 3543 of the civil code, there has to be negligence. We pointed this out, and negligence, of course, requires proximate cause. What did they say? They said, you know, this is essentially a no-fault. Who said that? Okay, that's the other side. I'm saying, what did the arbitrators say, that they were going to disregard your law? Well, no, they didn't. And I understand that there's some case law. I understand there's some case law that says it's almost impossible to prove something if they didn't say it in the record. But there's also case law that's been completely ignored by the appellee here that says when the only reasonable conclusion is that you couldn't reach this decision without ignoring, manifestly ignoring the law, then that's evidence that you may well have done that, and it's sufficient. The cases are the Halligan case and the Montes case. They're both cited. One's Second Circuit. One's Eleventh Circuit, I believe. So it seems to me that one of your problems is that the arbitrators said very little, because what they really end up doing is saying, we've considered absolutely everything. We've read the pleadings. We've read the documents. We've listened to the testimony. We've considered everything, everything, and you lose. And because they don't explain themselves, aren't we in a position where we would have to be able to exclude every possible way they could have reached that result? If they had said we reach our result through this line of reasoning and it's completely bizarre, you'd be better off, it seems to me. But don't we have to go through every single potential route and negate it as being not just wrong but outrageously wrong? And, again, I understand the standard's high. I didn't come into this with my eyes shut. No, but, I mean, don't we have to look at every possible route? I think you have to take the 30,000 foot above the maze look, first and foremost, and say, how do you get from A to Z? And you just, under logic, under common sense, and under the law of proximate causation, you can't get there, in our humble opinion. And if you break it down and go to the micro level that Mr. Lapidus, a very capable securities lawyer we've battled for a couple decades against each other, he'll take and say, well, they could have done this or they might have done that. That's as much speculation or more speculation than he's accusing us of. We say, look at the facts. Look at these unique facts that are known to the public. They're known because Madoff was in the paper. They're known because Mr. Lapidus has judicially admitted the key facts of this. Look at the last 10 or 12 pages of the reply brief. That's at pages 15 through 28. We didn't use that for argument. We used that so that you could look at uncontestable facts and say, based on those facts and based on the law, is it completely irrational for a panel to say that Stone and Youngberg, which was not a party to the investment, which was not a party to the contract, which was honest in all of its dealings, which gave its recommendation to go see somebody in the state of Washington 15 months before, and the client says, I'm happy with my investment, and then all of a sudden something bad happens, and we're two or three levels removed from any connection here, and yet all of this falls into our lap? I mean, that doesn't instill confidence. And you think, I think at least in my argument, which you've seen in the paper and perhaps you can tell from my tone of voice, I believe it, is that you can't possibly, if you're applying the law, whether it's federal law or whether it's state law, it's the proximate cause law that the U.S. Supreme Court in Holmes v. Sixth said, it's in every case, every system, legal system, unless statutorily it's excluded, you have to have a connection between A and B. I cited Paul's graph. That is something that we all learned in law school, and all of that was ignored. All of it was said, you know what? We're just going to find you liable here. No explanation. And so I've got a tough battle. I recognize that, but there are cases, and I would urge the Court to take a look at Halligan and Montes and those sorts of cases that look at this from a common-sense perspective. If you get from, you know, this starting point to this ending point, and it's illogical and it's irrational and it's not consistent with the basic, well-defined, explicit law of proximate causation, did something go wrong? And the answer is something went wrong here. Thank you, Mr. Suiter. Thank you. I think you should at least get an honorable mention, if not a victory, for being able to work Paul's graph into your argument. I kind of chuckled when I thought that, but it's almost like the case of Justice Cardoza decided many, many years ago. Thank you. Thank you. Good morning, Your Honor. Good morning. May it please the Court. My name is Kerry Lapidus, and I am appearing for the Kaye Family Trust. There are four exclusive grounds for an arbitration award to be vacated under Section 10A of the Federal Arbitration Act, and Stone and Youngberg cannot assert any of the first three grounds. The only one that they rely on is the manifest disregard ground, which this Court has determined to fall under the prompt that says arbitrators exceeded their powers. Manifest disregard requires two things. One is that the arbitrators disregarded the law, and two, that there is a manifestation by the arbitrators that they understood the law but consciously decided to disregard it. And Stone and Youngberg cannot prove either of these requirements. There is no evidence in the arbitration award or in the transcript of the five days of arbitration hearings that the arbitrators ever stated that they understood the law and that they were going to disregard it. The FINRA arbitration award that these arbitrators rendered and signed contains no explanation and no reasoning for their award, and FINRA's arbitration rules allow them to render such an award, and the party's arbitration agreement in this specific case states that the arbitrators do not have to explain the reasons for their decision. Counsel, let me ask you a question just factually, and I want you to assume for the purpose of this question that some form of causation is required. Are there facts that would have allowed the arbitrators to decide that the firm was negligent or in breach of some other duty and that Mr. Madoff's scheme was not a sufficient intervening force to cut off their initial liability? Yes, there are, and we argued causation throughout the arbitration hearing. The facts of this case are that my clients were clients of the investment brokerage firm of Stone and Youngberg, and under FINRA rules and under SEC rules and California state law, they owed a duty to my clients that if they made a recommendation, an investment recommendation, they had to conduct due diligence before they made that recommendation. They needed to have a reasonable basis for recommending the security, and if the arbitrators found that they breached that duty, that they did not have a reasonable basis, that they did not conduct their due diligence in a proper manner, then they can be found liable. Regardless of this causation issue? No, no, and that can be causation. Many courts have found that that suffices for causation, and we cited some of those cases in our brief. The Anwar case, the Goldman case, there have been several cases specifically dealing with this Madoff situation in which courts have denied motions to dismiss and rejecting the causation argument. There have been cases where the courts and juries have found causation based on this whole Madoff situation, and those decisions have been upheld. There was a recent case just a month ago called Schwarz v. Think Strategy in which the court, in the Second Circuit, in which the court engaged in a detailed analysis about causation and held specifically that causation was established of two ways because if the investment brokerage firm had conducted due diligence and had come to the conclusion that it did not have a reasonable basis for recommending the security, the investor never would have invested in the investment and never would have lost the money. And the same thing, the court also stated, that the investment firm would have also realized that it did not have a reasonable basis and it could not have recommended the security in the first instance. So, causation, we established causation. The arbitrators agreed with us that causation... So the question is whether they had to find that Mr. Madoff's fraud was kind of sufficient to excuse the causation that had... They would have had to find that Mr. Madoff's fraud was an intervening causation factor. And what we argued throughout the arbitration hearing was that, and as you stated in your questioning, there can be more than one cause of a loss. And that's what the California jury instruction states, that it just has to be a substantial factor and there can be more than one cause. Of course, Mr. Madoff was a cause of a loss, but also Stone and Youngberg were a cause because they recommended the investment without conducting the proper due diligence. So, counsel, Judge Gould has a question on it. So is the causation idea that you're expressing that if the investment firm had done its due diligence, then I would not have been put in this investment, so therefore the lack of due diligence caused the loss? Yes, that's correct. And the idea that criminal fraud by Madoff is not a supervening cause? Like, are there cases that say that criminality doesn't cut off the prior cause? That's correct, but there's also a common sense element to this. If you held otherwise, then you would face a situation where an investment brokerage firm that has a duty to conduct due diligence and does not conduct due diligence and recommends that an investor invest money with someone who turns out to be a con artist is relieved of liability. And that doesn't make sense. The investment firm's duty of due diligence has to be satisfied, and if they don't do it, they cannot just later say, well, we didn't know this person was a criminal and therefore we shouldn't be held liable. That's their job, to look into the evidence to see if this person was a criminal. And what we proved during this arbitration hearing was that there were many red flags that if Stone and Youngberg had done their due diligence, would have alerted them that there was something suspect about Madoff's operations. Now, I don't expect you to know that because of the five days of evidence that we presented to the arbitrators, but that's the reason for arbitration, to have arbitrators decide these things. Yeah, I thought that the investment here was not in a Madoff fund, but in some sort of fund of funds that turned out to be a feeder to Madoff. It was into a feeder fund. My clients invested in a fund called Future Select Prime Advisor, which then invested in another fund, which then invested in Madoff. But as we argued to the arbitrators, that does not relieve Stone and Youngberg of its duty at the outset to conduct its due diligence. And even if the arbitrators had made a mistake about causation, even if they were incorrect, that doesn't rise to the level of manifest disregard. This court, and many other courts, every other court that I'm aware of, has said that manifest disregard requires more than just an error of law or an error in applying the facts. You have to have a situation where the arbitrators stated that they understood what the law was and they're just going to disregard it. And they have to state that in the record. They have to state it either in the arbitration award or at some point in the transcript of the arbitration hearing. Let me ask you a question, Mr. Lapidus, if I may, changing the subject slightly. If the receivers, whoever are trying to recoup money from the Madoff people, succeed in getting some money and the trust were to recoup some of the loss, is there any reason why Stone and Youngberg shouldn't be indemnified or somehow segregated to the rights of the trust? This was an issue that came up during the arbitration hearing and the arbitrators decided this issue. We made an offer. It was a conditional offer that if the arbitrators found in our favor and gave us a full compensatory award, which included pre-judgment interest, then we would be willing to assign our interest in the future selection. Whether they assign or don't assign, I'm just trying to think, and let's suppose we affirm this award because it's merely clearly erroneous and not manifestly in disregard of the law. If the trust were ever to recoup any money, off the top of my head, I don't see why they wouldn't be entitled to pursue whatever other remedies they would have to be indemnified. Is there any reason why they couldn't do that? Yes, because that was an issue that was decided by the arbitrators. I don't see why they explicitly decided that. Well, that was part of the... They made some offer and all they did was award $700,000. It was an issue that was raised by both parties in the arbitration hearing and the arbitrators decided not to... They didn't deny it, they just didn't speak to it. Would that be fair to say? I think implicitly they decided it because that was an issue... Well, you might implicitly say they decided it and I might say they implicitly decided to avoid it. I mean, we don't know. All we know for sure is they made no mention of it. Would that be fair to say? The arbitrators made no mention of it in their arbitration award, that is correct. I also don't see how if the Madoff receivers got... If we uphold the arbitrator award and if the Madoff receiver got a big pile of money somehow, how Stern and Youngberg couldn't make a claim based on a right of subrogation and I don't see where would a right of subrogation by them after making a payment to the Kaye Trust, where would that be covered in the scope of the arbitration agreement? I don't see how it is. I don't see that Stern and Youngberg has any right to go after the Kaye Family Trust for subrogation. The point I'm trying to make is that the arbitrators were faced with the decision of having the Kaye Family Trust return... But I don't think they don't have to go after the Kaye for subrogation. They pay Kaye money and then if Madoff receiver gets money, they sue Madoff receiver and they assert that they're subrogated to rights that Kaye would have had. Where does the arbitration clause come into that? I don't know that the arbitration clause would come into any action that Stern and Youngberg would have against the Madoff trustee. I'm just saying as between Stern and Youngberg and the Kaye Family Trust, all issues were decided by the arbitrators and that case is now done and finished. I don't think that Stern and Youngberg can ever go back against the Kaye Family Trust and get either the interest in the fund or any money that comes to the Kaye Family Trust from the fund. Several points come to mind. One is this issue about did we do adequate due diligence. That's not an issue that is significant on this appeal. In my judgment, we feel that we did and fair enough, there were monies awarded against us. But the real question is, even assuming there was inadequate due diligence, don't you still have to deal with causation? And Mr. Lapidus hasn't addressed the time element here. We were nixed with this almost a year and a half afterwards in terms of when the discussion was and when Mr. Madoff made his confession. What if this would have been ten years? At what point does somebody say, well, you're not the cause there? And isn't that something that as a matter of law, arbitrators, judges, juries have to address? And I submit to you that when the evidence is uncontradicted that Mrs. Bledon and the Kaye Trust were happy with the investment, had they closed it out three months before Madoff confessed, we wouldn't be here and there wouldn't be an issue of our due diligence. But that's one issue that hasn't been addressed. I think the panel is spot on in highlighting the assignment issue and how this is fundamentally wrong and unfair. And we did address this in the district court. Overlooked that, in my opinion. And I realize I'm running out of time. But the question is, again, 30,000 feet above the maze, how do we get stuck with this when the evidence is uncontradicted that we were honest, that we did our business properly, that Mrs. Bledon was happy, and somebody just decides, well, let's award it against this entity that wasn't even a party to the investment. I mean, at some point you have to say, that's not caused by us. There's no proximate causation when every form of cause of action, whether it's federal or state or statutory or common law, requires causation. And that's the central element in our answer, in our opening statement, in our motion for non-suit, in our closing argument when we hand the 10 cases to the panel. And the panel ignores that. How is this not a manifest disregard? Let me just finish by mentioning the two cases here. Halligan, Second Circuit case, quote, when a reviewing court is inclined to find that arbitrators manifestly disregarded the law or the evidence and that an explanation, if given, would have strained credulity, the absence of explanation may reinforce the reviewing court's confidence that the arbitrators engaged in manifest disregard. And finally, Montes, we simply note that there is nothing in the decision itself or anywhere else in the record that refutes the inference that the law was ignored under the circumstances of this case. Thank you. That's where we're at. Thank you so much. We want to again thank counsel for, first of all, an excellent argument. Secondly, for your accommodating us with our clummy problems today. Thank you. We have some in our office over the weekend as well. Good luck with that. Thank you. Let's take a mic. Let me ask, Jesse, can you see if Kwame can continue for a second, please? I need to see if there's a water issue. Yes. Dave, you want to take a break? Go ahead.
judges: Silverman, Graber, Gould